**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

**IN THE MATTER OF:**

RELIABLE HEALTHCARE LOGISTICS, LLC          NO.: 24-20252-JDL

Debtor                                                    CHAPTER 11

**PLAN OF REORGANIZATION**
**FOR**
**RELIABLE HEALTHCARE LOGISTICS, LLC**
**SUBMITTED BY**
**TRUSTED PARTNER PHARMA LOGISTICS LLC**
**AS COMPETING PLAN OF REORGANIZATION**

**Dated:   April 3, 2025**

**Respectfully submitted,**

**LAW OFFICE OF**
**TONI CAMPBELL PARKER**

/s/ Toni Campbell Parker
Toni Campbell Parker (TN 6984)
45 North BB King Blvd., Suite 201
Memphis, Tennessee 38103
(901) 483-1020
tparker002@att.net

*Attorney for TPPL*

1

<u>**DEFINITIONS**</u>

In addition to such other terms as are defined in other sections of this Disclosure Statement and corresponding Plan, the following terms (which appear in this Plan as capitalized terms) have the following meanings as used in this Plan:

"Allowed Claim" or "Allowed Interest" means a claim against or interest in the Debtor to the extent that:

a.      a proof of such claim or interest was

    (1)    timely filed; or

    (2)    deemed timely filed pursuant to applicable law or by reason of an order of the Bankruptcy Court; and

                  b.    (1)    the Debtor, the Reorganized Debtor, the Trustee or any other party in interest entitled to do so does not file an objection within a time fixed by the Bankruptcy Court and the claim is not otherwise a Disputed Claim (but only to the extent that such claim is not a Disputed Claim);

    (2)    the claim or interest is allowed (and only to the extent allowed) by a Final Order; or

    (3)    the claim or interest is allowed pursuant to this Plan.

"Bankruptcy Code" means Title 11 of the United States Code, as was in effect on the Petition Date, as amended by any amendment applicable to the Reorganization Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Tennessee, Western Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Local

Rules of the United States Bankruptcy Court for the Western District of Tennessee as may from time to time be in effect.

"Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming this Plan.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

"Confirmation Order" means the Final Order of the Bankruptcy Court confirming this Plan.

"Debtor" means the Debtor, Reliable Healthcare Logistics, LLX.

"Disputed Claim" means a claim as to which a proof of claim has been filed or deemed filed, as to which an objection has been or may be timely filed by the Debtor, the Reorganized Debtor, the Trustee or any other party in interest and which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by this Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Before an objection has been or may be timely filed, for the purposes of this Plan, a claim shall be considered a Disputed Claim to the extent that the amount of the claim specified in the proof of claim exceeds the amount of the claim scheduled by the Debtor as other than disputed, contingent, or unliquidated, on the Schedules of Assets and Liabilities.

"Effective Date" means the date specified as the Effective Date of this Plan.

"Estate" means the estate created in the Reorganization Case for the Debtor pursuant to Section 541 of the Bankruptcy Code.

"Final Order" means an Order as entered on the docket as to which the time to appeal or seek review or rehearing has expired and as to which no appeal, review, re-argument or petition for

3

*certiorari* is pending, or as to which any appeal, review, re-argument or petition for *certiorari*

that has been sought has been resolved by the highest court with appropriate jurisdiction, or if

pending, no stay shall have been obtained.

"Fiscal Year" means the twelve calendar month period ending December 31 of each

year.

"Generally Accepted Accounting Principles" means those principles of accounting set

forth in pronouncements of the Financial Accounting Standards Board of the American Institute

of Certified Public Accountants or which have other substantial authoritative support and are

applicable in the circumstances as of the date of a report, as such principles are from time to time

supplemented and amended.

"Impaired" shall have the meaning ascribed by 11 U.S.C. § 1124.

"Membership Interest" or "Equity Interest" means the membership interest of the holder of

Allowed Interests as of the Petition Date in the Debtor.

"Order" means an order or judgment of the Bankruptcy Court as entered on the docket.

"Person" shall have the meaning ascribed by 11 U.S.C. § 101.

"Petition Date" means January 19, 2024.

"Plan" means this Plan and any Amended Plan of Reorganization filed by the Plan

Proponent, Trusted Partner Pharma Logistics, LLX . If any further Amended Plan has been filed,

then "Plan" means the most recent amended plan filed with the Court.

"Plan Proponent" means the Interested Party Trusted Partner Pharma Logistics, LLC.

"Reorganization Case" means the chapter 11 case pending in the Bankruptcy Court for the

Debtor.

"Reorganized Debtor" means Trusted Partner Pharma Logistics, LLC and after

Effective Date.

"Secured Claim" shall mean a Claim secured by a lien against property in which the Debtors

has an interest, or which is subject to set-off under § 553 of the Bankruptcy Code to the extent of

the value (determined in accordance with § 506(a) of the Bankruptcy Code) of the interest of the

holder of such Claim and the Debtor's interest in such property or to the extent of the amount subject

to such set-off, as the case may be.

### INTERPRETATION, RULES OF CONSTRUCTION, COMPUTATION OF TIME

1.      Any term used in this Plan that is not defined in this Plan but that is used in the

Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in, and shall be

construed in accordance with the rules of construction pursuant to, the Bankruptcy Code or the

Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in 11 U.S.C. §

102 shall apply.

2.      The words "herein," "hereof," "hereto," "hereunder" and others of similar import

refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained

in the Plan.

3.      Any reference in this Plan to a document being in a particular form means that the

document shall be in substantially such form.

4.      Any reference in this Plan to an existing document means such document, as it may

have been amended, modified or supplemented from time to time.

5.      Whenever from the context it is appropriate, each term stated in either the singular

or the plural shall include both the singular and the plural.

6.      In computing any period of time prescribed or allowed by the Plan, the provisions of

Fᴇᴅ. R. Bᴀɴᴋʀ. P. 9006(a) shall apply.

**Pʟᴀɴ Pʀᴏᴠɪꜱɪᴏɴꜱ**

Pursuant to 11 U.S.C. §§ 1122(a) and 1123(a) (1) the Plan divides claims against and interests in the Debtors into the following classes:

**A.      Classification of Claims and Interests.**

Pursuant to 11 U.S.C. §§ 1122(a) and 1123(a)(1) the Plan divides claims against and interests in the Debtor  into the following classes:

**Class 1: Administrative Expense Claims.** Class 1 Consists of unpaid professional fees and expenses, United Statese Trustee quarterly fees due pursuant to 28 U.S.C. § 1930(a)(6). Notwithstanding the Debtors' designation of Allowed Claims under 11 U.S.C. § 507(a)(2) as a Class for convenience purposes, 11 U.S.C. § 1123(a)(1) does not contemplate classification of such Claims and holders of Allowed administrative expenses will not be solicited, nor will they be entitled, to vote on the Plan. Allowed administrative expenses estimated to be $50,000 are to be paid on the Effective Date of the Plan, unless a particular claimant agrees to different treatment. After confirmation but prior to the entry of a Final Decree, the Plan Proponent shall have filed with the Court and serve on the U.S. Trustee a financial report for each quarter, or portion thereof, for as long as the case remains open in a format prescribed by the U.S. Trustee and provided to proponent of Plan by the U.S. Trustee.

**Class 2:      Class 2 Priority Tax Claims**

To the knowledge of TPPL there are the following taxing authorities owed claims

by Reliable:

| | |
|---|---|
| Illinois Dept. of Prof. Regulations | $50.00 |
| State of New Jersey | $73.86 |
| Broward County Tax Collector | $114.00 |
| Nevada State Board of Pharmacy | $281.75 |
| Treasurer of Virginia Board of Pharmacy | $350.00 |
| Tennessee Department of Revenue | $3,315.82 |
| City of Obetz, Ohio (Columbus area) | $8,14037 |
| Washoe County Treasurer | $15,473.09 |
| Albert Uresti (Bexar County Tax Assessor) | $29,952.89 |
| Palm Beach County Tax Collector (2002) | $32,394.78 |
| Palm Beach County Tax Collector (2023) | $40,355.50 |
| Carmen P. Turner (Tax Assessor-Ft. Bend) | $0.00 |
| Fort Bend (Sugarland, TX) Tax Assessor | $41,675.90 |
| Bexar County Tax (San Antonio) | $94,869.88 |
| Fort Bend County (Sugarland, TX) Ad Valorem Taxes | $6,371.45 |

There is a total of $273,419.29 which under the Code such tax claim must receive present value of such claim, in regular installments paid over a period not exceeding five (5) years.  TPPL is proposing 100% over twelve (12) months but reserves the right to extend such time if needed to no more than the maximum of  (5) year period..

## DESIGNATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**Class 3:**       **Class 3 Prepetition Unsecured Claims from Executory Contracts**

Pursuant to 11 U.S.C. Sections 1122(a) (1) and (2), the Plan divides claims against and interests in the Debtor (excluding the Non-Classified Claims described in Class 1 and 2 above) into the following

7

classes and treatments below:

### Class 3.01     Pre-petition Unsecured Claim of Thomson Logistics Assets

Class 3.01 consists of the unpaid balance due to Thomson Logistics for prepetition rent arrearages in the amount of $133,548.32 for the Lockbourne facility located at 5653 Creekside Parkway. Debtor/TPPL is assuming the lease of Thomson. Thomson shall retain its pre-petition security deposit as security for the lease. Upon the Effective Date TPPL shall pay twenty-five percent (25%) of the pre-petition rent arrearage. The balance of pre-petition rent shall be paid remaining 75% in 9 equal monthly installments following the Effective Date. Plan Proponent reserves the right to object to the amount of any cure claim asserted by Thomson.  In the event of a dispute over the cure amount, the Plan Proponent shall file a motion with the Bankruptcy Court to determine the cure amount. Pending resolution of such amount by the Court, the Plan Proponent shall make interim payments based on the cure amount which Plan Proponent contends is owed. Class 3.01 is impaired.

### Class 3.02 Pre-Petition Unsecured Claim of Coleman Logistics Assets

Class 3.02 consists of the unpaid balance due to Coleman Logistics for prepetition rent arrearages in the amount of $164,393.66 for 1113 Gillingham, Sugarland, Texas. Debtor/TPPL is assuming the lease of Coleman. Coleman shall retain its pre-petition security deposit as security for the lease. Upon the Effective Date TPPL shall pay twenty-five percent (25%) of the pre-petition rent arrearage. The balance of pre-petition rent shall be paid remaining 75% in 9 equal monthly installments following the Effective Date. Plan Proponent reserves the right to object to the amount of any cure claim asserted by Coleman.  In the event of a dispute over the cure amount, the Plan Proponent shall file a motion with the Bankruptcy Court to determine the cure amount. Pending resolution of such amount by the Court, the Plan Proponent shall make interim payments based on the cure amount which Plan Proponent contends is owed. Class 3.02 is impaired.

### Class 3.03 Pre-Petition Unsecured Claim of Prologis NA2

Class 3.03 consists of the unpaid balance due to Prologis NA2  for prepetition rent arrearages in the amount of \$219,760,73 for 751 NW 33rd Street, Ste. 190, Pompano Beach, Florida 33064. Debtor/TPPL is assuming the lease of Prologis. Prologis shall retain its pre-petition security deposit as security for the lease. Upon the Effective Date TPPL shall pay twenty-five percent (25%) of the pre-petition rent arrearage. The balance of pre-petition rent shall be paid remaining 75% in 9 equal monthly installments following the Effective Date. Plan Proponent reserves the right to object to the amount of any cure claim asserted by Prologis.  In the event of a dispute over the cure amount, the Plan Proponent shall file a motion with the Bankruptcy Court to determine the cure amount. Pending resolution of such amount by the Court, the Plan Proponent shall make interim payments based on the cure amount which Plan Proponent contends is owed. Class 3.03 is impaired.

### Class 3.04 Pre-Petition Unsecured Claim of BCI IV

Class 3.04 consists of the unpaid balance due for prepetition rent arrearages in the amount of \$510,928.54 for 951 Clint Moore Road, Boca Raton, Florida. Debtor/TPPL is assuming the lease of BCI. BCI shall retain its pre-petition security deposit as security for the lease. Upon the Effective Date TPPL shall pay twenty-five percent (25%) of the pre-petition rent arrearage. The balance of pre-petition rent shall be paid remaining 75% in 9 equal monthly installments following the Effective Date. Plan Proponent reserves the right to object to the amount of any cure claim asserted by BCI. In the event of a dispute over the cure amount, the Plan Proponent shall file a motion with the Bankruptcy Court to determine the cure amount. Pending resolution of such amount by the Court, the Plan Proponent shall make interim payments based on the cure amount which Plan Proponent contends is owed. Class 3.04 is impaired.

### Class 3.05 Pre-Petition Unsecured Claim of Aurobindo Pharma USA, Inc.

Class 3.05 is the pre-petition unsecured balance owed to Aurobindo Pharma USA, Inc. arising out of a sublease for property located at 6 Wheeling, Dayton, New Jersey.  The lease shall be assumed on the Effective Date. The total arrearage claim is not known and subject to the right of TPPL to object to such claim once filed by this class as stated herein. The pre-petition rent arrearages once allowed shall be paid in accordance with the post-petition lease modification agreement entered into between the parties.  Pursuant to such modification, any pre-petition arrearage and post-petition deferred rent shall be paid at the rate of 25% of the amount owed on Effective Date and remining 75% of balance over 9 months. Plan Proponent reserves the right to object to the amount of any cure claim asserted by this Class.  In the event of a dispute over amount, the Plan Proponent shall file a motion with the Bankruptcy Court to determine such amount. Pending resolution of such amount by the Court, the Plan Proponent shall make interim payments based on the cure amount which Plan Proponent contends is owed. Class 3.05 is impaired.

### Class 3.06 Pre-Petition of Unsecured Claim Raymond Corporation

Class 3.06 is the pre-petition unsecured balance of three separate claims owed to Raymond Corporation on executory contracts to be assumed by TPPL of Intralogistics-SF, NI, Storage-CINN of $648,449.04 for unpaid arrearage. The contracts will be assumed and once claims allowed will be paid in full. The.  Plan Proponent reserves the right to object to the amount of any cure claim asserted by Raymond Corporation.  In the event of a dispute over the cure amount, the Plan Proponent shall file a motion with the Bankruptcy Court to determine the cure amount. Pending resolution of such amount by the Court, the Plan Proponent shall make interim payments based on the cure amount which Plan Proponent contends is owed. Any allowed pre-petition arrearage shall be paid at the rate of 25% of the amount owed on the Effective Date and remining 75% of balance over 9 months. Class 3.06 is impaired.

**Class 4 Pre-Petition General Non-Priority Unsecured Claims**

Class 4 consists of all allowed General Non-Priority Unsecured Claims not provided for in another class, including, but not limited to pre-petition trade creditors, rejection claims from rejected leases or executory contracts, unsecured creditors whose claims are listed in the Debtor's schedule but are not listed as dispute, contingent, or unliquidated and unsecured creditors who have filed proofs of claim for which no objections have been filed.  Class 4 claims aggregate approximately $14,201,924. The Debtor reserves the right to object to any claim.

TPPL will pay according to the attached payment schedule certain unsecured claims in full if $5,000 or less will be paid 100% of their claim on Effective Date of Plan. All claims in Class 4 over $5,000 will be paid the greater of 10% of their claim or $5,000 whichever is greater on Effective Date of Plan. There will be no payment to any Debtor (Reliable) claims, Debtor owned company or intercompany claims or insider claims. Class 4 is impaired.

**Class 4.01 Pre-Petition Unsecured Claims Related to Rejected/Terminated Leases**

Class 4.01 consists of the Allowed Unsecured claims arising out of unexpired nonresidential real estate leases which were either terminated prior to the Petition Date or rejected pursuant to 11 U.S.C. Section 365 asserted by the following:

| | | |
|---|---|---|
| Finlayson Logistics Assets, LLC | $300,000 | 6500 Park of Commerce Blvd., |
| | | Boca Raton, Florida |
| Icon Reno Property Owner Pool3 NV | $1,016,376.09 | 1175 Trademark Dr., Reno, NV |
| Pool 5 Industrial TX, LLC | $0 | 1310 Cornerway, San Antonio, TX |

TPPL reserves the right to object to any of the lease rejection/termination claims.  Allowed

Class 4.01 claims shall be paid with all Class 4 claims 10% of their claim or $5,000 whichever is greater. Class 4.01 is impaired.

### Class 4.02 Pre-Petition Unsecured Claims for Legal Services

TPPL will pay the following unsecured claims for legal services on any such unsecured claim if $5,000 or less 100% of their claim on Effective Date of Plan.  Any unsecured claim of over $5,000 or more will be paid the greater of 10% of their claim or $5,000 whichever is greater. Class 4.02 is impaired.

| | |
|---|---|
| Larkin Hoffman (Maryland) | $4,942.16 |
| Baker & Hostetter (Cleveland) | $5,784.50 |
| Bailey Glasser, LLP (Wilmington, DE) | $7,511.83 |
| Burr Forman (Birmingham, AL) | $16,486.46 |
| Tompkins, McGuire, Wachenfeld & Barry (NJ) | $32,224.77 |
| Fellows LaBriota | $66,901.73 |
| Quarles & Brady (Milwaukee) | $73,412.93 |
| Skoubye, Nelson & Johansen (Salt Lake) | $112,937.58 |
| Bass, Berry & Sims (Nashville) | $1,013,877.59 |

### Class 4.03 Pre-Petition Unsecured Claims of Other Unsecured Claims

Class 4.03 shall include all remaining unsecured claims including but not limited to transportation & logistics claims; unsecured claims for goods and services; claims of certain Debtor owned companies, and product damage claim as stated on the attached Exhibit Plan for Reorganization of TPPL Payout Projections. Class 4.03 is impaired.

### Class 4.04 Pre-Petition Unsecured Claims of Certain Lawsuits.

Clare-Petition Unsecured Claims of lawsuits with Encube Ethicals, Virtus Pharmaceuticals and

12

Woodfield Distribution.  TPPL does not proposed payout to these disputed claims.

### Class 5 Interests of Equity Holders

Class 5 consists of the interests of Reliable Healthcare Logistics Investments, LLC, the sole of the Debtor.  Reliable Healthcare Logistics Investments, LLC's pre-petition membership interest will be extinguished on the Effective Date.  TPPL is contributing new capital to the reorganized debtor in the amount of $500,000 in exchange for one hundred percent (100%) of the membership interest in the reorganized Debtor. The new capital will be paid on or before the Effective Date in full. Class 5 is impaired.

**B.**    **Objections to Classification.**

If there are any objections to the classification of claims as proposed by the TPPL, and those objections are sustained by the Bankruptcy Court, then to the extent that the objections are sustained, the classification of the claim will be deemed modified so as to cure the objection as sustained.

**C.**    **DISTRIBUTION AND BAR DATES**

**1.**    **Distribution Dates.**

The Plan provides for distributions to holders of claims against and interests in the Debtors over a period of time. Subject to the provisions of this Plan, and except as otherwise provided in this Plan cash or property to be distributed pursuant to this Plan if proposed with any interest shall be distributed on or after the Effective Date as stated above  and in accordance with the terms of Section G of the Plan. All distributions shall be made on a Distribution Date. Distribution Dates vary by the type of Claim against or Interest in the Debtors. The Distribution Dates for the various Classes of Claims and Interests are as follows unless otherwise expressly provided:

a.    Class 1 – Effective Date of the Plan from cash on hand unless otherwise provided or

agreed to by the parties.

b.      Class 2 -- Payment from Debtor's future income or new capital contributed by
        TPPL.

c.      Class 3 – Payment from Debtor's future income or new capital contributed by
        TPPL.

d.      Class 4 -- Payment from Debtor's future income or new capital contributed by
        TPPL.

e.      Class 5 – New capital contributed by TPPL.

**2.      Bar Date - Administrative Expense Claims and Applications for Fees and
         Expenses for Professionals**

Pursuant to the Plan, all applications (other than requests for allowance or payment of
interim or final compensation and expenses by counsel for the Debtor, other professionals
employed by the Debtor for compensation of professionals for services rendered and for
reimbursement of expenses incurred on or before the Effective Date and all other requests for
payment of administrative costs and expenses incurred before the Effective Date pursuant to 11
U.S.C. §§ 507(a)(1) or 507(b) (except for trade debt incurred in the ordinary course of business and
Claims pursuant to 28 U.S.C. § 1930)) **are to be filed no later than thirty (30) days after the
Confirmation Order**, unless such date is extended by the Bankruptcy Court on notice to the
Reorganized Debtor. Counsel for the Debtor and counsel employed by the Debtor shall have 120
days after the date all objections to all claims are resolved to file an application for interim or final
compensation and reimbursement of expenses. Any such Claim that is not filed within this deadline
will be forever barred.

## D.     TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**Class 1: <u>Administrative Expense Claims</u>.**   Allowed Class 1 claims shall be paid in cash, in full on the Effective Date of the Plan. Any administrative claims representing liability incurred in the ordinary course of business of the Debtors may be paid in cash in the ordinary course of business. Included in this class are the attorneys' fees incurred by the Debtor. An application for attorneys' fees and expenses shall be filed by the attorneys for the Debtors within the time frames set forth in Section C (2). Additionally, any United States Trustee Quarterly Fees under 28 U.S.C. § 1930(a)(6) due and owing or assessable prior to confirmation shall be paid in full on the Effective Date of the Plan and any further such fees shall be paid in accordance with 28 U.S.C. § 1930(a)(6). After confirmation, the Debtor shall file with the Court and serve on the United States Trustee a financial report for each quarter, or portion thereof, for which the case remains open in a format prescribed by the United States Trustee and provided to the Debtor by the United States Trustee.

**Classes 2 through 5 shall be treated as stated above.**

## E.     NON-ACCEPTANCE BY ANY IMPAIRED CLASS - MODIFICATION OF PLAN

If any Impaired Class does not accept the Plan, the Debtors reserve the right to amend the Plan to obtain an acceptance and, or in the alternative, to change the treatment of that Class so as to impair or not impair that Class or to eliminate the separate classification under the Plan.

## F.     MEANS FOR IMPLEMENTATION OF THE PLAN

**1.     Operation of the Debtors' Business.** Subject to the transactions contemplated by the Plan, and new capital the Plan will be funded by the operation of the reorganized Debtor by TPPL and the new Board of Directors.

2.     **Restructuring Transactions.** On or prior to the Effective Date, the Debtor and

Reorganized Debtor shall take such actions as may be necessary and appropriate to effect the relevant provisions of the Plan including, but not limited to, all of the transactions described in this Plan. Such actions may also include: (a) the execution and delivery of appropriate agreements containing terms that are consistent with the terms of this Plan and to satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of this Plan; and (c) all other actions that the Debtor and Reorganized Debtor determine are necessary and appropriate including the making of filings or recordings in connection with the relevant transaction.

      **3. Implementation of Plan.  TPPL** will be responsible for implementation of Plan.

      **4. Preservation of Causes of Action.** In accordance with §1123(b) (3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Reorganized Debtors will retain and may (but shall not be required to) enforce all claims and causes of action of any sort against any party. Debtors or the Reorganized Debtor, in its sole and absolute discretion, will determine whether to bring, settle, release, compromise, or enforce such claims or causes of action (or decline to do any of the foregoing), and will not be required to seek further approval of the Bankruptcy Court for such action. The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interest of the Reorganized Debtors or any successors holding such rights of action.

      **5.      Exclusivity Period.** There is no exclusivity at this time.

      **6.      Vesting of Assets--No Transfer Taxes**

      Except as otherwise provided in any provision of the Plan, upon entry of the Order of Confirmation and pursuant to 11 U.S.C. § 1141(b) and (c), any and all property of the Estate shall vest in the reorganized Debtor free of all liens, security interests, mortgages or other interests in

property secured by an Allowed Claim except as expressly provided for in the Plan. Pursuant to §1146(c), no stamp taxes, transfer tax or Tennessee indebtedness tax or other similar taxes shall be due as a result of the making or delivery of an instrument of transfer pursuant to the Plan.

### 9. Conditions Precedent to Confirmation and Distribution under the Plan

#### a. Conditions Precedent to Confirmation of the Plan.

Confirmation of the Plan will not occur unless and until all the following conditions precedent has been satisfied:

(i)     The Bankruptcy Court shall have approved by Final Order a Disclosure Statement with respect to this Plan, in form and substance acceptable to the Debtor and Reorganized Debtor in its and their sole and absolute discretion.

(ii)     The Confirmation Order, in form and substance acceptable to the Debtors and Reorganized Debtor in its and their sole and absolute discretion.

#### b.     Conditions Precedent to Obligation to Make Distributions under the Plan.

Neither the Plan Proponent nor the Debtor, Debtor-in-possession, or Reorganized Debtor shall have any obligation to make any of the distributions under the Plan until all the following conditions precedent has been satisfied:

(i)     The Confirmation Order shall have been entered by the Bankruptcy Court and shall be a Final Order, the Effective Date shall have occurred, and no request for revocation of the Confirmation Order under 11 U.S.C. § 1144 or otherwise, shall have been made or, if made shall remain pending.

(ii)     Each Exhibit, document or agreement to be executed by the Debtor or the Reorganized Debtor in connection with the Plan shall be in form and

17

substance reasonable acceptable to TPPL.

10.     **Provisions for the Assumption or Rejection of Executory Contracts and Unexpired Leases.**

a.      **Treatment of executory contracts and unexpired leases.**

**Generally.**   TPPL has the right, subject to Bankruptcy Court approval, to assume or reject any executory contract or unexpired lease entered into by the Debtor prior to the Petition Date on or before an order of confirmation on commercial real property. Claims for damages for rejection are treated as unsecured claims arising prior to the Petition Date and to the extent such Claims are timely filed and Allowed by the Bankruptcy Court are included in Class 4 of the Plan. Because of the number of variables that affect a Claim for rejection damages, TPPL cannot now predict fully the Allowed amount of Claims, if any, arising from the contemplated rejection of executory contracts and unexpired leases. The best estimate is contained in Disclosure Statement and Plan of TPPL. In the case of rejection of employment agreements and unexpired leases of real property, such Claims for damages are restricted by certain limitations imposed by the Bankruptcy Code. TPPL reserves its right to assume or reject the leases within the time limitations under the Code. TPPL reserves the right within the time limitations of 11 U.S.C. Section 365 to assume or reject all personal property leases.  TPPL will be bound by any Final Order entered with the Bankruptcy Court as to final assumption or rejection.  Upon the rejection of any lease of personal property the claimant will be entitled to a rejection claim and treated under Class 4.

b.      **Assumption and Rejection Generally.**  Except as otherwise provided in any Order of the Bankruptcy Court, or in any contract, instrument, or other agreement or document incorporated into the Plan or entered into in connection with the Plan or the Reorganization Case pursuant to 11 U.S.C. § 365, on the Effective Date, each of the executory contracts and unexpired

18

leases will be either assumed or rejected as set forth in any Final Order of assumption or rejection by TPPL, subject to the same rights as the Debtor held or holds at, on, or after the petition date to modify and/or terminate such agreements under applicable non-bankruptcy law if elected by TPPL.

  **c.**  **Bar date for rejection damage Claims.**

  If the rejection of an executory contract or unexpired lease pursuant to the Plan of Final Order gives rise to a Claim by the other party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 4; provided, however, that the unsecured Claim arising from the rejection shall forever be barred and shall not be enforceable against the Debtor, the Reorganized Debtor TPPL, its successors or properties, unless a proof of claim is filed and served on the Reorganized Debtor TPPL within thirty (30) days after the date of notice of the entry of an order of the Bankruptcy Court rejecting the executory contract or unexpired lease.

**G.**  **Distributions and Determinations of Claims and Interests.**

  **1.**  **Time of Distributions.** Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under this Plan shall be made from future income of

TPPL as set forth in the Plan.

  **2.**  **No Interest on Claims or Interests**. Unless otherwise specifically provided for in this Plan, Confirmation Order, or a postpetition agreement in writing between TPPL and a Claimholder or Interestholder, postpetition interest shall not accrue or be paid on Claims or Interests, and no Claimholder or Interestholder shall be entitled to interest accruing on or after the Petition Date on any Claim, right, or Interest. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim or Disputed Interest in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim or Disputed

Interest becomes an Allowed Claim or Allowed Interest.

      3.      **Disbursing Agent.** Unless otherwise provided, TPPL shall make all distributions required under this Plan and shall be defined as the "Disbursing Agent" herein.

      4.      **Claims Administration Responsibility.**

      (a)      **Reorganized Debtor.** TPPL will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions (if any) with respect to all Claims against and Interests in the Debtor.

      (b) **Filing of Objections.** Unless otherwise extended by the Bankruptcy Court, any objections to Claims or Interests shall be served and filed on or before the Claims/Interests Objection Deadline which shall be 90 days after the Effective Date. Notwithstanding any authority to the contrary, an objection to a Claim or Interest shall be deemed properly served on the Claimholder or Interestholder if TPPL effect service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for a Claimholder or Interestholder is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or interest or other representative identified on the proof of claim or interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the Claimholder's or Interestholder's behalf in the Chapter 11 Case.

      (c) **Determination of Claims and Interests.** Any Claim or Interest determined and liquidated pursuant to (i) an order of the Bankruptcy Court, or (ii) applicable non-bankruptcy law (which determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has

expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains

pending) shall be deemed an Allowed Claim or an Allowed Interest, as the case may be, in such

liquidated amount and satisfied in accordance with this Plan. Nothing contained in this Section shall

constitute or be deemed a waiver of any claim, right, or Cause of Action that TPPL may have against

any Person in connection with or arising out of any Claim or Claims, including, without limitation,

any rights under section 157(b) of title 28 of the United States Code.

      **5. Delivery of Distributions.** Distributions to Allowed Claimholders or Allowed

Interestholders shall be made by the Disbursing Agent (a) at the addresses set forth on the proofs

of claim filed by such Claimholders or Interestholders (or at the last known addresses of such

Claimholders or Interestholders if no proof of claim is filed or if TPPL has been notified in writing

of a change of address), (b) at the addresses set forth in any written notices of address changes

delivered to the Disbursing Agent after the date of any related proof of claim, or (c) at the addresses

reflected in the Schedules if no proof of claim has been filed and the Disbursing Agent has not

received a written notice of a change of address. If any Claimholder's or Interestholder's distribution

is returned as undeliverable, no further distributions to such Claimholder or Interestholder shall be

made unless and until the Disbursing Agent is notified of such Claimholder's or Interestholder's

then-current address, at which time all missed distributions shall be made to such Claimholder or

Interestholder without interest or give notice to counsel of TPPL.

      **6.**      **Procedures for Treating and Resolving Disputed and Contingent Claims.**

      (a)      **No Distributions Pending Allowance.**  No payments or distributions will

be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until

all objections to such Disputed Claim or Disputed Interest have been settled or withdrawn or have

been determined by a Final Order, and the Disputed Claim or Disputed Interest has become an

Allowed Claim or Allowed Interest. All objections to Claims or Interests must be filed on or before the Claims/Interests Objection Deadline.

(b) **Distributions After Allowance.** Payments and distributions from TPPL to each respective Claimholder or Interestholder on account of a Disputed Claim or Disputed Interest, to the extent that it ultimately becomes an Allowed Claim or Allowed Interest, will be made in accordance with provisions of this Plan that govern distributions to such Claimholder or Interestholder. On the first Periodic Distribution Date following the date when a Disputed Claim or Disputed Interest becomes undisputed, noncontingent and liquidated, the Disbursing Agent will distribute to the Claimholder or Interestholder any Cash or other property, to be distributed Pro Rata to Claimholders and Interestholders in accordance with the other provisions of this Plan.

7.    **Fractional Dollars.** Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8.    **Unclaimed and After Acquired Property.** Any property to be distributed on account of a Claim against or Interest in the Debtor that is unclaimed for six (6) months after distribution thereof by mail to (i) the latest mailing address filed of record for the party entitled thereto, or (ii) if no such mailing address has been so filed, the mailing address reflected on the Schedule of Assets and Liabilities filed by the Debtors, as amended, shall become property of TPPL. In the case of any such property which remains unclaimed for six (6) months after distribution, any cash shall be property of TPPL free of any restrictions thereon, to be paid or distributed pursuant to this Plan. Further, any refunds of insurance or other premiums, rebates or similar items that are received by TPPL after the conclusion of the payments called for in the Plan shall be and become property of TPPL without the necessity for reopening of the case or further administration with respect to such

funds.

**9. Setoffs.** TPPL may, but shall not be required to, set off against any Allowed Claim and

the distributions to be made pursuant to the Plan on account of such claim, claims of any kind or

nature that TPPL may have against the holder of such Allowed Claim; provided, however, that

neither the failure to effect such a set off nor the allowance of any claim against TPPL shall constitute

a waiver or release by TPPL of any claim that TPPL may possess against such holder.

**H.      Employment of Professionals, Executive Management and Others.**

Upon the Confirmation Order becoming final, TPPL may employ such

professionals as it may deem appropriate to assist in the administration and, if necessary, liquidation

of assets as well as the completion of all reports, taxes, forms and the like as may reasonably be

required or as deemed necessary. In this regard, TPPL may employ lawyers, accountants, business

brokers, investment brokers and real estate brokers, as well as any other professional or assistant as

it may deem necessary, including clerical assistants.

**I.      Preservation of Rights of Action**

Except as otherwise expressly provided herein, any rights or causes of action accruing to

the Debtors or its Estate including, without limitation, any rights or causes of action pursuant to 11

U.S.C. §§ 544 through 550, inclusive, or any other statute or legal theory shall become assets of,

and vest in, TPPL.

**J.      Revesting of Assets.**

Except as otherwise explicitly provided in this Plan, on the Effective Date, all property

comprising of the Estate (including causes of action, but excluding property that has been

abandoned pursuant to an order of the Bankruptcy Court) shall revest in TPPL, as of the Effective

Date, free and clear of all Claims, liens, charges, encumbrances, rights and Interests of creditors and

equity security holders. As of the Effective Date, TPPL may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and Confirmation Order.

**K. Releases; Setoffs; Subordination; Exculpation; Limitation of Liability; and Injunction.**

**1.     Release by Holders of Claims.** On the Effective Date, (a) each person that votes to accept this Plan; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity that has held, holds or may hold a Claim, in consideration for the obligations of TPPL under this Plan and the Cash, and other contracts, instruments, releases, agreements or documents to be delivered in connection with this Plan, shall have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtors and TPPL from any Claim or Cause of Action existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim of such person, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation.

**2.     Setoffs.** Except as otherwise provided in the Plan, TPPL may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that TPPL may have against such Claimholder; but neither failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by TPPL of any such claim that TPPL may have against such Claimholder.

**3.     Subordination Rights.** Except as otherwise specifically provided for in the Plan with respect to the subordination provisions of the treatment of certain classes, which provisions may be

specifically enforced all Claims against TPPL and all rights and claims between or among Claimholders relating in any manner whatsoever to distributions on account of Claims against or Interests in TPPL, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Claimholders or Interestholders having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Claimholder or Interestholder by reason of any subordination rights or otherwise, so that each Claimholder and Interestholder shall have and receive the benefit of the distributions in the manner set forth in the Plan.

4.      **Exculpation and Limitation of Liability.** Unless otherwise provided in this Plan, the TPPL, the Statutory Committee, the members of the Statutory Committee in their capacities as such, and any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation cause of action, or liability to one another or to any Claimholder or Interestholder, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Case, negotiation and filing of this Plan, filing the Chapter 11 case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct and except with respect to obligations arising under confidentiality

agreements, joint interest agreements, and protective orders entered during the Chapter 11 Case, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. No Claimholder or Interestholder, or any other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successor or assigns of the foregoing, shall have any right of action against the parties listed in this Section for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan.

**5.      Exclusions and Limitations on Exculpation, Indemnification, and Releases.**

Notwithstanding anything in this Plan to the contrary, no provision of this Plan or the Confirmation Order, including, without limitation, any exculpation, indemnification or release provision, shall modify, release, or otherwise limit the liability of (i) any person who is, or becomes, the subject of an avoidance or similar action, contemplated by the Bankruptcy Code, including, without limitation, those found at 11 U.S.C. §§ 501 - 562, or (ii) any person not specifically released hereunder, including, without limitation, any person that is a co-obligor or joint tortfeasor of a released party or that is otherwise liable under theories of vicarious or other derivative liability.

6.      **Injunction.** The satisfaction, release, and discharge pursuant to this Section shall act as an injunction against any person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by §§ 524 and 1141 thereof.

**M.      Retention of Jurisdiction**

Following Confirmation of this Plan, the Bankruptcy Court shall retain such jurisdiction as is legally permissible after Confirmation, including, without limitation, for the following purposes:

1.      To determine the allowability, classification, or priority of claims and interests upon an objection by TPPL or by other parties in interest with standing to bring such objections or proceeding;

2.      To construe or to take any action to enforce and execute this Plan, the Confirmation Order, or any other Order of the Bankruptcy Court, issue such Orders as may be necessary for the implementation, execution, performance, and consummation of this Plan and all matters referred to herein, and determine all matters that may be pending before the Bankruptcy Court in the Reorganization Case on or before the Effective Date with respect to any entity;

3.      To determine any and all applications for allowance of compensation and expense reimbursement of professionals for services rendered in periods commencing on or before the Effective Date;

4.      To determine any other request for payment of administrative expenses;

5.      To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of this Plan;

6.      To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefore;

7.      To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted prior to entry of the Confirmation Order;

8.      To determine such other matters and for such other purposes as may be provided in

the Confirmation Order;

9.      To modify this Plan pursuant to 11 U.S.C. § 1127, to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purposes;

10.     To issue injunctions or take such other actions or make such other Orders as may be necessary or appropriate to restrain interference with this Plan or its execution or implementation by any entity, including TPPL; and

11.     To issue such Orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any entity, to the full extent authorized by the Bankruptcy Code.

12.     To issue any orders of discharge as applicable under the Plan and as to any issues with respect to any motions filed under Section 1141 of the Bankruptcy Code.

## N.      EFFECTIVE DATE

The Plan will become effective on or before the first business day following thirty (30) days after the Confirmation Order becomes a Final Order.

## O.      MISCELLANEOUS PROVISIONS

### 1.      Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing, pursuant to 11 U.S.C. § 1128, shall be paid on or before the Effective Date.

To the extent required by law, TPPL or other responsible party, in this case, shall timely pay fees incurred post-petition pursuant to 28 U.S.C. §1930(a) (6) until this case is closed, converted or dismissed, and TPPL or other responsible party shall file with the Court and serve on the U.S.

Trustee a financial report, in a format prescribed and provided by the U.S. Trustee, for each quarter or portion thereof that the case remains open.

To the extent that any payment of pre-confirmation U.S. Trustee quarterly fees has not included payment for disbursements related to the operation of the Debtors, or any other of Debtors' assets and those disbursements are properly includible in the calculations of the Debtors' disbursements for the purpose of calculating the U.S. Trustee's quarterly fee, then said payment shall be recalculated (with due credit for any payment previously made) and paid on or before the Effective Date, provided however, that in no event shall more than the maximum fee due to the U.S. Trustee shall be paid. Any past-due pre-confirmation U.S. Trustee quarterly fees shall be brought current by payment on or before the Effective Date.

## 2.    Heading of Articles and Sections

The headings of the Articles and Sections of this Plan are inserted for convenience only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provision of the Plan.

## 3.    Binding Effect; Successors and Assigns.

The rights, benefits and obligations of any person or entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors or assigns of such person or entity; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed (i) to constitute a waiver or release of any Claims by TPPL or any other Person, (ii) to prejudice in any manner the rights of TPPL or any other Person or (iii) to constitute any admission by TPPL or any other Person.

## 4.    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of the State of Tennessee shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 Case, including the Plan Documents, except as may otherwise be provided in such agreements, documents, instruments and Plan Documents.

5.      **Modification of Plan.**

Modifications of the Plan may be proposed in writing by the Plan Proponents at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Plan Proponent shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the sponsors, provided that (i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and (iii) the circumstances warrant such modifications. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

6.      **Severability.**

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR MEMBERSHIP INTEREST OR TRANSACTION; THE PLAN PROPONENTS MAY MODIFY THE PLAN IN ACCORDANCE WITH  THE PLAN SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY CLAIM OR MEMBERSHIP INTEREST. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (1) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (2) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

## P.  CONFIRMATION REQUEST

### 1.      Classes Entitled to Vote.

Each impaired class of Claims and Equity Interests shall be entitled to vote separately to accept or reject the Plan as provided in the order entered by the Bankruptcy Court governing the voting and balloting procedures applicable to the Plan. Any unimpaired class of Claims or Equity Interests shall be deemed to have accepted the Plan.

### 2.      Class Acceptance Requirement.

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims in such class that have voted on the Plan. A class of Membership Interests shall have accepted the Plan if it is accepted by at least one-half in number of the Allowed Equity Interests in such class that have voted on the Plan.

### 3.      Cramdown.

If any class of Claims or Membership Interests shall fail to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. In the event that confirmation is requested under section 1129(b) of the Bankruptcy Code, the Plan Proponents reserve the right to amend or otherwise modify the Plan to eliminate distributions to holders of any Claims or Membership Interests junior to any class of Claims or Membership Interests that is impaired.

Respectfully Submitted,

Trusted Partner Pharma Logistics, LLC

/s/Ben Maizel,
By: Ben Maizel, Managing Member

/s/ Toni Campbell Parker

**TONI CAMPBELL PARKER (TN # 6984)**
ATTORNEY FOR TPPL
45 North BB King Blvd,. SUITE 201
MEMPHIS, TENNESSEE  38103
Tparker002@att,net
(901) 483-1020

CERTIFICATE OF SERVICE

The undersigned hereby certifies a copy of this Plan has been served on all creditors of this estate and all parties on the mailing matrix of this Chapter 11 case this the 3rd day of April.

/s/Toni Campbell Parker
Toni Campbell Parker